David Schexnaydre, *Pro Hac Vice*
david@schexnaydre.com
SCHEXNAYDRE LAW FIRM
2895 Hwy 190, Ste 212
Mandeville, LA 70471
Telephone: (985) 292-2020
Fax: (985) 235-1089

Jennifer W. Kennedy, CA SBN 185406
jenniferkennedyesq@gmail.com
JENNIFER W. KENNEDY
ATTORNEY AT LAW
61 S. Baldwin Ave. #1626
Sierra Madre, CA 91025
Telephone: (626) 888-2263

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MICHAEL McMAHON, *et al.*, <br><br> Plaintiffs, <br><br>       vs. <br> THE CITY OF LOS ANGELES; ERIC GARCETTI, as an individual and in his official capacity as Mayor of the City of Los Angeles; KAREN BASS, as an individual and in her official capacity as Mayor of the City of Los Angeles; DOES 1-100, <br><br> Defendants. | Case No.: <br><br><br> **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL** |

    NOW INTO COURT, through undersigned counsel, come Plaintiffs,

Michael McMahon, *et al.*, (hereinafter "Plaintiffs"), who file this Complaint

against Defendants, the City of Los Angeles, Eric Garcetti, and Karen Bass

(hereinafter "Defendants"), presenting allegations and causes of action as follows:

## DESCRIPTION OF ACTION

**This is a §1983 case seeking redress from Defendants for the deprivation of Plaintiffs' Constitutional and federal statutory right to refuse an EUA investigational drug without incurring a penalty or loss of benefits to which Plaintiffs were otherwise entitled.**

This lawsuit is being brought under 42 U.S.C. §1983 seeking redress for deprivation of rights granted to Plaintiffs by the United States Constitution, 21 U.S.C. §360bbb-3 *et seq* (the EUA statute), 42 USC §247d-6d *et seq* (the PREP Act), 45 CFR Part 46, 18 U.S.C. §242, ICCPR Treaty, and the common laws of the State of California to hold accountable Defendants, State Actors at all times pertinent herein, for damages caused by their deprivation of Plaintiffs' rights arising out of Defendants' unconstitutional, unlawful, malicious, unequal and contractually violative COVID-19 investigational drug mandate. Special laws apply to the drugs designated for compliance with Defendants' vaccine mandates because the FDA defines the available drugs as "investigational with no license for any indication." And even though Defendants' mandates were instituted during and in response to a pandemic emergency, as the U.S. Supreme Court noted since the beginning of the pandemic: **"even in a pandemic, the Constitution cannot be put**

**away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 208 L.Ed.2d 206 (2020).

## I.     <u>INTRODUCTION</u>

1.     The Plaintiffs herein are current and former employees of the City of Los Angeles serving in various departments across the city.

2.     From the beginning of the COVID-19 pandemic through the filing of this complaint, the City of Los Angeles and its mayors, Eric Garcetti and Karen Bass, have continually used the pandemic to deprive Plaintiffs of their Constitutional protections and statutory authorities.

3.     In August of 2021, Defendants enacted an Ordinance requiring Plaintiffs to inject certain drugs, biologics, and devices into their bodies as a condition to continue employment with the City of Los Angeles (the Ordinance).

4.     The mandated drugs were under Emergency Use Authorization (EUA), Emergency Use Instructions (EUI), or the PREP Act authority, none of which can ever come under mandatory conditions.

5.     The Ordinance, as applied through the use of EUA/EUI/PREP Act, unlawfully usurped the authority of Congress to determine the conditions by which its laws would function and, specifically, the conditions by which individuals could not be subjected to the use of EUA/EUI/PREP Act products.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

6.     Plaintiffs sue Defendants for deprivation of Fourteenth Amendment and federal statutory rights, which led to severe financial, emotional, and other damages.

## II.     JURISDICTION AND VENUE

7.     This Court has federal-question jurisdiction under 42 U.S.C. §1983 for violations of civil rights under the Fourteenth Amendment to the United States Constitution.

8.     The case presents a federal question within the Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1131 and 1343.

9.     Venue is proper in this Court under 28 U.S.C. § 1391 because at all times pertinent, the parties resided in this District, and a substantial part of the events giving rise to this claim occurred in this District.

10.     This Court has the authority and jurisdiction to award costs and reasonable attorney's fees under 42 U.S.C. § 1988.

11.      This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367.

12.     This Court has personal jurisdiction over Defendants as they are domiciled within this Court's jurisdictional boundaries.

13.    This Court has subject matter jurisdiction over the parties because all acts complained of herein were committed by Defendants in the State of California and caused damage and/or deprivation to the Plaintiffs listed herein.

### III.    PLAINTIFFS

14.    The following individuals are plaintiffs herein:

14.1.   Plaintiff, Michael McMahon, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.2.   Plaintiff, Donovan Anderson, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.3.   Plaintiff, Kevin Austin, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.4.   Plaintiff, Teresa Batson, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.5.   Plaintiff, Jeannine Bedard, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.6.   Plaintiff, Chris Bethurum, is an adult individual who all times

pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.7. Plaintiff, Rodginald Cayette, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.8. Plaintiff, Mark Clark, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.9. Plaintiff, Nick Coronado, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.10. Plaintiff, Victor H. Corral, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.11. Plaintiff, Scott Cupp, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.12. Plaintiff, Richard Davis, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.13. Plaintiff, Pedro De La Cruz Rivera, is an adult individual who all

times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.14. Plaintiff, Darren Ehrenberg, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.15. Plaintiff, Guillermo Espinoza, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.16. Plaintiff, Jason Foster, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.17. Plaintiff, David Garcia, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.18. Plaintiff, Paulette Gonzales, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.19. Plaintiff, Cristian Granucci, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.20. Plaintiff, Douglas Harvey, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City

of Los Angeles.

14.21. Plaintiff, Nathaniel Helton, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.22. Plaintiff, James Huett, is an adult individual who all times pertinent resided in the State of California, and is a current employee of the City of Los Angeles.

14.23. Plaintiff, Howard Hwang, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.24. Plaintiff, Steven Infante, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.25. Plaintiff, Susan Jimenez, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.26. Plaintiff, Houtan Khadjehnouri, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.27. Plaintiff, Reynaldo Masangkay, is an adult individual who all times

pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.28. Plaintiff, Clifford McKenzie, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.29. Plaintiff, Henry Milke, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.30. Plaintiff, Richard Moberg, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.31. Plaintiff, Steven Morones, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.32. Plaintiff, Ron Muller, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.33. Plaintiff, Jose Nolasco, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.34. Plaintiff, Michael Pace, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.35. Plaintiff, Fernando Pantoja, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.36. Plaintiff, Pearl Pantoja, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.37. Plaintiff, Michael Parks, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.38. Plaintiff, Brian Peel, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.39. Plaintiff, Rogelio Quiles, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.40. Plaintiff, Richard Rea, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.41. Plaintiff, Joshua Rodriguez, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.42. Plaintiff, Sergio Rodriguez, is an adult individual who all times

pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.43. Plaintiff, Jazmine Sanchez, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.44. Plaintiff, Jennifer Sapone, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.45. Plaintiff, Aki Sasagawa, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.46. Plaintiff, Anne Marie Spurgeon, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.47. Plaintiff, Jullian Stine, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.48. Plaintiff, Johnathan Stringer, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.49. Plaintiff, Natalie Stringer, is an adult individual who all times

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.50. Plaintiff, Yvonne Thompson, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.51. Plaintiff, Mario Tovar, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.52. Plaintiff, Cheryl Valdivia, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.53. Plaintiff, Johann Wallace, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.54. Plaintiff, Thomas Wickham II, is an adult individual who all times pertinent resided in the State of California, and is an employee of the City of Los Angeles.

14.55. Plaintiff, Theodore Williams IV, is an adult individual who all times pertinent resided in the State of California, and is a former employee of the City of Los Angeles.

14.56. Plaintiff, Michael Yoro, is an adult individual who all times pertinent

resided in the State of California, and is an employee of the City of Los Angeles.

## IV.    DEFENDANTS

15.    The following are named as defendants herein:

15.1.  Defendant, the City of Los Angeles, is a municipality located in the State of California.

15.2.  Defendant, Eric Garcetti, was the Mayor of the City of Los Angeles from July 1, 2013, through December 11, 2022. Mr. Garcetti is named as a defendant in his individual and official capacities.

15.3.  Defendant, Karen Bass, is the current Mayor of the City of Los Angeles, taking office on December 12, 2022.  Ms. Bass is named as a defendant in her individual and official capacities.

## V.    FACTUAL ALLEGATIONS

16.    Plaintiffs make no assertions regarding whether it is lawful for a public or private entity to mandate taking a ***licensed*** vaccine. Plaintiffs' allegations herein relate only to Defendants' depriving Plaintiffs of their right to refuse EUA investigational drugs and/or PREP Act countermeasures.

17.    Plaintiffs adamantly assert that an individual has the absolute Constitutional and federal statutory right to refuse the administration of an Emergency Use Authorization (EUA) drug (e.g., Pfizer BioNTech COVID-19 Vaccine), biologic, or device (e.g., EUA testing articles and masks) without

incurring a penalty or losing a benefit to which they are otherwise entitled. Moreover, such a right is not dependent upon a person seeking a religious or medical exemption.

18.  Plaintiffs assert that they have the Constitutional and federal statutory right to refuse administration of a drug or biologic granted expanded access protocols by the CDC under its assumed Emergency Use Instructions (EUI) authority.

19.  Plaintiffs assert that they have the Constitutional and federal statutory right to refuse participation in any activity or product under the PREP Act.

20.  Plaintiffs assert that Congress prohibits Defendants from establishing 21 U.S.C. §360bbb-3 and PREP Act conditions requiring Plaintiffs to surrender their statutory rights and Constitutional protections as a condition to enjoy the privileges and benefits offered by the City of Los Angeles.

## A.  THE ORDINANCE

21.  On or about August 18, 2021, Defendants enacted "Ordinance No. 187134"[1] "adding Article 12 to Chapter 7 of Division 4 of the Los Angeles Administrative code" requiring "all current and future city employees" to become

---

[1] See Exhibit A, Ordinance No. 187134

vaccinated against COVID-19 as a condition to continue or start public employment with the City, effective as of August 25, 2023.

22.    However, the Ordinance, as applied, required Plaintiffs to unlawfully inject an EUA, EUI, or PREP Act medical product into their bodies by October 19, 2021[2] as a condition to continue employment in violation of federal law and Plaintiffs' Fourteenth Amendment guarantees (see *infra*).

23.    Defendants' policy required Plaintiffs to wear a covered countermeasure[3] or utilize an EUA investigational diagnostic testing article[4] if they were exempt or not in compliance with the policy, in violation of Plaintiffs' Constitutional and statutory rights (*see infra*).

24.    As a matter of law, no COVID-19 drug existed in the State of California, or anywhere else in the United States, that was not under EUA or EUI in 2021, 2022, and most of 2023.

25.    Moreover, no drug, testing article, or mask that was not under the federal authority of the PREP Act has been made available to Plaintiffs from the beginning of the COVID-19 Pandemic through the filing of this Complaint.

_____

[2] Section 4.701(a)
[3] Section 4.703(b)
[4] Section 4.702(b)

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

26.    Therefore, at all times pertinent, it is an irrefutable fact that Defendants relied exclusively on EUA, EUI, and PREP Act medical products for Plaintiffs to comply with Ordinance 187134.

27.    After being presented with Defendants' ultimatum, the following Plaintiffs exercised their federally secured right to REFUSE an injection of an EUA/EUI/PREP Act medical product, at which time Defendants penalized them by disciplining Plaintiffs and ultimately terminating their employment, thereby causing Plaintiffs to sustain economic and emotional damages:

1.  Michael McMahon

2.  Teresa Batson

3.  Jeannine Bedard

4.  Rodginald Cayette

5.  Mark Clark

6.  Richard Davis

7.  Darren Ehrenburg

8.  Cristian Granucci

9.  Douglas Harvey

10. Nathaniel Helton

11. Susan Jimenez

12. Steven Morones

13. Ron Muller

14. Michael Parks

15. Jazmine Sanchez

16. Anne Marie Spurgeon

17. Johnathan Stringer

18. Natalie Stringer

19. Johann Wallace

20. Teddy Williams

28.    After being presented with Defendants' ultimatum, the following

Plaintiffs ACCEPTED UNDER DURESS an injection of an EUA/EUI/PREP Act

medical product, and although they did not sustain economic damages, they each

sustained emotional and legal[5] damages directly related to the deprivation of their

Constitutional and federal statutory rights to be free from "sanctions," "coercion,"

"undue influence," and "unjustifiable pressures"[6]:

1.    Donovan Anderson

---

[5] Should these Plaintiffs develop an injury from the product's use, their due process
rights to seek judicial relief have been deprived of them by an act of fraud by
Defendants.
[6] President Biden was bound to comply with 45 CFR Part 46 and the Belmont
Report.  45 CFR § 46.116 and the Belmont Report define the "adequate standards"
of informed consent when individuals are involved in investigational new drugs
under federal authority or funding.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

2. Kevin Austin

3. Chris Bethurum

4. Nick Coronado

5. Victor H. Corral

6. Scott Cupp

7. Pedro De La Cruz Rivera

8. Guillermo Espinoza

9. Jason Foster

10. David Garcia

11. Paulette Gonzales

12. James Huett

13. Howard Hwang

14. Steven Infante

15. Houtan Khadjehnouri

16. Reynaldo Masangkay

17. Clifford McKenzie

18. Henry Milke

19. Richard Moberg

20. Jose Nolasco

21. Fernando Pantoja

22. Pearl Pantoja

23. Brian Peel

24. Rogelio Quiles

25. Joshua Rodriguez

26. Sergio Rodriguez

27. Jennifer Sapone

28. Aki Sasagawa

29. Jullian Stine

30. Yvonne Thompson

31. Mario Tovar

32. Cheryl Valdivia

33. Thomas Wickham II

34. Michael Yoro

29.     Mike Pace has the unique circumstance of willingly taking the shot(s) before Defendants mandated them. But after being presented with Defendants' ultimatum and the Defendants' demand that Plaintiff share with Defendants his personal health records, Plaintiff Michael Pace did not share with Defendants his personal health records.  Mr. Pace's choosing to accept or reject an unlicensed drug is a private matter of which Defendants were not in a lawful position to demand disclosure under threat of penalty.  After his refusal, Mr. Pace was disciplined and

caused to sustain 30 days of involuntary leave followed by a suspension without pay of 15 days, until Defendants capitulated and allowed Mr. Pace to return to work without showing proof of having accepted under duress an injection of an EUA/EUI/PREP Act medical product.

30.     Plaintiffs sustained financial, emotional, and legal[7] damages directly related to Defendants depriving Plaintiffs of their Constitutional and federal statutory rights to be free from "sanctions," "coercion," "undue influence," and "unjustifiable pressures" when involved in a federally funded investigational drug, biologic, or device.

**B.     EMERGENCY USE AUTHORIZATION (EUA)**

31.     As a matter of law, Congress prohibits persons from introducing drugs and biologics into commerce before receiving an FDA marketing license.[8]

32.     However, for limited reasons of compassion, education, and emergency use, Congress provides a legal mechanism to allow persons to participate in the investigational[9] and unlicensed use of drugs, biologics, and

---

[7] Should Plaintiffs using the investigational drugs under duress develop an injury from the product's use, their due process rights to seek judicial relief have been deprived of them by an act of fraud by Defendants.

[8] "No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) or (j) is effective with respect to such drug." 21 U.S.C. § 355(a)

[9] Investigational drug "means a new drug or biological drug that is used in a clinical investigation." (21 CFR 312.3 "Investigational new drug") Clinical investigation

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

devices according to the product's labeling, known as "expanded access

protocols."[10]

33.    "Unlicensed use" means the use of a medical product for a purpose

not licensed by the FDA (legal indication, usage, and contraindications) according

to the product's labeling.

34.    A drug manufacturer may promote a licensed product only according

to its legal indication and uses.[11]

35.    Only the FDA can assign the drug, biologic, or device its legal

indication and classification.

---

"means any experiment in which a drug is administered or dispensed to, or used
involving, one or more human subjects. For the purposes of this part, an experiment
is any use of a drug except for the use of a marketed drug in the course of medical
practice." (21 CFR 312.3 "Clinical investigation").

[10] 21 U.S.C. § 360bbb *et. seq.* Short Title: "Expanded Access to Unapproved
Therapies and Diagnostics"

[11] "Under the provisions of the Food, Drug and Cosmetic Act, a company must
specify the intended uses of a product in its new drug application to FDA. Once
approved, the drug may not be marketed or promoted for so-called 'off-label' uses
– *i.e.*, any use not specified in an application and approved by FDA. Pfizer promoted
the sale of Bextra for several uses and dosages that the FDA specifically declined to
approve due to safety concerns. The company will pay a criminal fine of $1.195
billion, the largest criminal fine ever imposed in the United States for any matter." -
Justice Department Announces Largest Health Care Fraud Settlement in Its History.
Justice.gov. Published September 2, 2009. Accessed November 12, 2023.
https://www.justice.gov/opa/pr/justice-department-announces-largest-health-care-
fraud-settlement-its-history

36.     Moreover, a drug, biologic, or device is legally governed by its classification and FDA-licensed indication, usage, and contraindication.

37.     A drug or biologic is never governed by its formulation.

38.     Congress expressly authorized only the HHS Secretary to authorize expanded access protocols for the investigational and unlicensed use of drugs, biologics, and devices.[12]

39.     Congress enacted Project Bioshield[13] in 2004, establishing emergency expanded access protocols[14] for the investigational and unlicensed emergency use of drugs, biologics, and devices for large populations.

40.     Medical products authorized under this section of law are known as medical countermeasures (MCMs).[15]

41.     A drug or biologic under EUA/EUI is considered investigational, and, as a matter of law, it can not have a licensed indication for its emergency use.[16]

---

[12] 21 U.S.C. §360bbb(a)
[13] https://www.govinfo.gov/content/pkg/PLAW-108publ276/pdf/PLAW-108publ276.pdf
[14] 21 U.S.C. § 360bbb-3
[15] National Defense Authorization Act 2004 TITLE XVI—DEFENSE BIOMEDICAL COUNTERMEASURES
https://www.govinfo.gov/content/pkg/PLAW-108publ136/pdf/PLAW-108publ136.pdf
[16] 21 U.S.C. §360bbb-3(a)(2)(A,B)

42.    On December 11, 2020, the FDA issued to Pfizer-BioNTech the first

COVID-19 EUA for its investigational drug (officially named Pfizer-BioNTech

COVID-19 Vaccine[17]), and the FDA confirmed that Pfizer's product "is an

investigational vaccine not licensed for any indication."[18]

43.    On December 18, 2020, the FDA issued to ModernaTX, Inc., an EUA

for its investigational drug (officially named Moderna COVID-19 Vaccine), and

the FDA confirmed that Moderna's product "is an investigational vaccine not

licensed for any indication."[19]

44.    On February 27, 2021, the FDA issued to Janssen Biotech, Inc., an

EUA for its investigational drug (officially named Janssen COVID-19 Vaccine),

and the FDA confirmed that Janssen's product "is an investigational vaccine not

licensed for any indication."[20]

45.    Congress requires the HHS Secretary to establish the Scope of

Authorization[21] for MCMs, determine the conditions by which persons can

_____

[17] *Id*. The FDA improperly allowed Pfizer to add the word "Vaccine" to its
investigational name.  The court should not confuse this name to mean the drug's
legal indication. Pfizer-BioNTech COVID-19 Vaccine is an investigational drug
having no legal indication to treat, cure, or prevent any known disease.  The FDA
classified the drug as an "investigational new drug."
[18] 86 Fed.Reg. 5200, Jan. 19, 2021
[19] 86 Fed.Reg. 5200, Jan. 19, 2021
[20] 86 Fed.Reg. 28608, May 27, 2021
[21] 21 U.S.C. §360bbb-3(d)

participate in an activity (e.g., manufacturing, distribution, administration, use/participation) and access the product,[22] and then publish the Scope of Authorization in the Federal Register[23] for public notice.

46.     As an example, the HHS Secretary issued an EUA for Moderna (86 Fed.Reg. 5200, Jan. 19, 2021), Janssen (86 Fed.Reg. 28608, May 27, 2021), and Pfizer (86 Fed.Reg. 5200, Jan. 19, 2021).

47.     In each EUA, the HHS Secretary establishes the conditions by which persons can participate in the program.

48.     The conditions of the EUA are in addition to any applicable requirements under 21 U.S.C. §360bbb-3.

49.     The COVID-19 drugs under the City's mandate were the property of the federal government.

50.     The federal government created the CDC COVID-19 Vaccination Program to distribute the property to residents of California.

51.     The program required absolute voluntary participation of all persons, and only persons authorized by the CDC could participate in the federal property.

52.     President Biden was under a legal obligation to adhere to 21 U.S.C. §360bbb-3, Article VII of the ICCPR Treaty, 45 CFR Part 46, the Belmont Report,

---

[22] 21 U.S.C. §360bbb-3(e)
[23] 21 U.S.C. §360bbb-3(b)(4)

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

10 U.S.C. § 980, and additional laws and regulations when distributing federal property.

53.     Defendants were not authorized by the U.S. Congress, California legislature, or any other authority to interfere in the distribution of the federal government's COVID-19 property.

54.     Congress requires the HHS Secretary to ensure that individuals considering the use of the MCM are informed of their legal rights[24] under the statute (option to accept or refuse).

55.     The right to accept exempts the products from 21 U.S.C. § 355(a) during the declared emergency; thus, the individual has the legal authority to use the unlicensed MCM.

56.     The right to refuse the unlicensed use of the MCMs ensures that the federal government and persons under its authority comply with the laws pertaining to the investigational use of unlicensed MCMs.[25]

57.     The lawful right of the individual to "consider" the use of the unlicensed MCM is a right conferred upon the individual in clear and unambiguous language by a valid act of Congress.

---

[24] 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III)
[25] 45 CFR Part 46, the Belmont Report, Article VII of the ICCPR Treaty, Federal Wide Assurance program, CDC COVID-19 Vaccination Program Providers Agreement, among others.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

58.     No government, public officer, private employer, or any other person of authority may interfere in the individual's autonomous choice, whether that choice is to accept or refuse the use of the MCM.

59.     The choice of whether to use or not use an MCM belongs exclusively to the individual and not to a third party agreeing or disagreeing with that choice.

60.     21 U.S.C. §360bbb-3 is a pervasive federal scheme to introduce MCMs into commerce only under a declared emergency.

61.     The Supremacy Clause Doctrine dictates that no person has lawful authority to establish, enforce, or continue in effect with a law, rule, regulation, ordinance, or any other legal means that interferes with or amends the MCM's expanded access protocol as established by the HHS Secretary and Congress.[26]

62.     Such interference poses an obstacle to accomplishing federal goals for the unlicensed use of the MCMs.

---

[26] "FDA states that the terms and conditions of an EUA issued under section 564 preempt state or local law, both legislative requirements and common-law duties, that impose different or additional requirements on the medical product for which the EUA was issued in the context of the emergency declared under section 564." - Emergency Use Authorization of Medical Products and Related Authorities," Section VII. U.S. Food and Drug Administration. Published 2022. Accessed November 17, 2023. https://www.fda.gov/regulatory-information/search-fda-guidance-documents/emergency-use-authorization-medical-products-and-related-authorities

63. Public and private employers may not use a state's at-will employment law or any other common law as the means to interfere in Plaintiffs' lawful authority to exercise their 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) option.

64. The use of that law to interfere with Plaintiffs' autonomous choice is impossible to reconcile with federal law.[27]

65. Congress does not intend to displace a state's at-will employment doctrine in all areas of law. However, when the MCM scheme is viewed under the field preemption test, it is clear that Congress preempts the use of the State's at-will employment law when it is used solely to interfere in the administration of the MCM.

66. Congress completely preempts a state, or political subdivision of a state, or any other legal authority from establishing, enforcing, or continuing in effect, with respect to a MCM under 21 U.S.C. §360bbb-3, any provision of law that is different from, or is in conflict with, any requirement applicable under the statute or the Scope of Authorization issued by the HHS Secretary.

---

[27] *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("[Congress's] intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it' or where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'") (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

67.     Congress empowers the HHS Secretary with the authority to establish the conditions by which persons participate in activities under 21 U.S.C. § 360bbb-3.

68.     However, Congress was explicit that "Nothing in this section provides the Secretary any authority to require any person to carry out any activity that becomes lawful pursuant to an authorization under this section."[28]

69.     In other words, the HHS Secretary has lawful authority to grant expanded access protocols for an MCM.

70.     Still, Congress prohibits the Secretary from requiring any person to manufacture, distribute, store, administer, inject, wear, test, or otherwise use the product.

71.     Defendants' policy, relying on an EUA/EUI MCMs for compliance, is arbitrary and capricious because Congress expressly prohibits persons from manufacturing, distributing, administering, or using the MCM under involuntary conditions.

72.     Healthcare workers are not legally obligated to administer MCMs to Plaintiffs, nor can Defendants require healthcare workers to perform that function.

---

[28] 21 U.S.C. §360bbb-3(l)

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

73.     Moreover, Plaintiffs are not required to use any product authorized under the section of the law, nor can Defendants require Plaintiffs to use them as a condition of anything.

74.     Defendants do not claim to be the HHS Secretary, nor do they state by what authority they can require that which Congress prohibits (i.e., involuntary participation).

75.     Therefore, when Defendants enacted Ordinance No. 187134 relying exclusively on EUA COVID-19 drugs for compliance with the Ordinance, they fraudulently usurped the authority of Congress, the HHS Secretary, and Plaintiffs by amending the conditions established under 21 U.S.C. §360bbb-3 by a valid act of Congress.

76.     Defendants had no lawful power to insert themselves into a position of authority delegated only to the United States HHS Secretary.

77.     Defendants had no authority to amend the legal scheme by which persons access the federal government's COVID-19 property.

78.     Defendants had no authority to require of Plaintiffs that which the U.S. Congress prohibits (i.e., mandatory participation).

79.     Defendants' policy, as applied, was *ultra vires*; thus, it lacked the force of law.

80.    Defendants, therefore, misrepresented and extended their authority under fraudulent pretense when establishing and acting under Ordinance No. 187134 to penalize Plaintiffs for not complying with the requirements of the Ordinance.

## C.    EMERGENCY USE INSTRUCTION (EUI)

81.    The CDC has claimed the authority to grant expanded access protocols it cites as Emergency Use Instructions for the unlicensed use of products. However, no such authority exists in federal law.

82.    The CDC claims that "The CDC Director has legal authority to create, issue, and disseminate EUI for FDA-approved medical products. EUI inform healthcare providers and recipients about such products' approved, licensed, or cleared conditions of use under circumstances that go beyond the scope of the approved labeling (package insert)."[29]

83.    There are several issued EUIs for COVID-19 drugs that the public is unaware of.

---

[29] Questions and Answers about Emergency Use Instructions (EUI) below Are Answers to Frequently Asked Questions about Emergency Use Instructions (EUI). Refer to EUI for Pfizer-BioNTech COVID-19 Vaccine and Moderna COVID-19 Vaccine for Additional Doses. Accessed November 12, 2023. https://www.cdc.gov/vaccines/covid-19/eui/downloads/EUI-FAQ.pdf

84.     Until courts rule otherwise, authorities will continue to enact mandatory policies relying on licensed drugs authorized by the CDC for unlicensed use.

85.     Because the CDC is issuing EUIs under the 21 U.S.C. §360bbb-3 authority of the HHS Secretary, they operate under the same treaties, laws, federal agreements, and federal contracts as EUAs.

86.     Defendants' reliance on EUIs for compliance with Ordinance No. 187134 violated federal law and Plaintiffs' Constitutional and statutory rights.

**D.     THE PREP ACT**

87.     In 2005, Congress passed the Public Readiness and Emergency Preparedness Act, hereafter referred to as the PREP Act,[30] to provide immunities for persons volunteering for "covered" activities.

88.     In accordance therewith, the HHS Secretary issued a PREP Act declaration for Medical Countermeasures against COVID-19 in February 2020.[31]

89.     As a matter of law, all COVID-19 drugs, influenza vaccines, masks, and diagnostic testing articles under Defendants' Ordinance No. 187134 requirements have been declared a countermeasure under the PREP Act.[32]

---

[30] 42 USC 247d-6d & 42 USC 247d-6e
[31] 85 FR 15198
[32] See Amendments I-XI of 85 FR 15198

90. The PREP Act, fundamentally, is an immunity statute.

91. Due to the near absolute immunities provided by the U.S. Congress for persons involved in the various activities of "covered countermeasures," the statute establishes restrictions, obligations, and duties for persons and governments involved in those activities.

92. Congress expressly crafted language preempting state and local law conflicting with the PREP Act,[33] which provides, in pertinent part:

(8) Preemption of State law

> During the effective period of a declaration under subsection (b)…no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—

> (A) is different from, or is in conflict with, any requirement applicable under this section; and

> (B) relates to the…administration…of the covered countermeasure, **or to any matter included in a requirement applicable to the covered countermeasure** under this section or any other provision of this chapter, **or under the Federal Food, Drug, and Cosmetic Act.**[34] [emphasis added].

93. Moreover, Congress informed legal authorities that:

(c) Voluntary program

---

[33] 42 U.S.C. § 247d-6d(b)(8)
[34] 21 U.S.C. § 301 et. seq.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

The Secretary shall ensure that a State, local, or Department of Health and Human Services plan to administer or use a covered countermeasure is consistent with any declaration under 247d–6d of this title…and that potential participants are educated with respect to contraindications, **the voluntary nature of the program**, and the availability of potential benefits and compensation under this part. [Emphasis added.][35]

94.     The "voluntary nature" of the "program" consists of "covered countermeasures,"[36] "covered persons,"[37] "covered individuals,"[38] and "qualified persons."[39]

95.     Therefore, as a general rule, no person may utilize any lawful authority to "establish," "enforce," or "continue in effect with" "any provision of law or legal requirement" that otherwise conflicts or interferes with the "voluntary nature" of the program by establishing involuntary conditions such as Defendants' Ordinance No. 187134.

96.     Moreover, no person may utilize any lawful authority to "establish," "enforce," or "continue in effect with" "any provision of law or legal requirement" that interferes with "any matter" relating to any "requirement applicable to the

---

[35] 42 U.S.C. § 247d-6e(c)
[36] 42 USC § 247d-6d(i)(1)
[37] 42 USC § 247d-6d(i)(2)
[38] 42 USC 247d-6d(a)(3)(C)(i,ii)
[39] 42 USC § 247d-6d(i)(8)

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

covered countermeasure" under 21 U.S.C. §360bbb-3 which includes a person's authority to accept or refuse the MCM without consequence.[40]

97.     As a matter of law, Congress **completely preempts** a state, or political subdivision of a state, or any other legal authority from establishing, enforcing, or continuing in effect with respect to a countermeasure under the PREP Act, any provision of law that is different from or is in conflict with, any requirement applicable under the statute or the declared emergency and its amendments as published in the Federal Register.

98.     Therefore, Defendants were expressly preempted from using its authority for the sole purpose of interfering with Plaintiffs' authority to determine participation in a PREP Act "covered countermeasure."

99.     The policy, as applied, required Plaintiffs to inject or otherwise use a PREP Act product as a condition to enjoy a privilege of government (e.g., public employment).

100.     When Plaintiffs refused to surrender their statutory authority to refuse the product's administration, Defendants, acting with moral turpitude, informed Plaintiffs that they would lose access to living wages (public employment) and

---

[40] 42 U.S.C. § 247d-6d(b)(8)(b) states to any matter or requirement applicable to a countermeasure under the FDCA. 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) is under the FDCA.

their liberties (e.g., freedom from wearing investigational masks or using experimental testing articles).

101.   Defendants' use of Ordinance No. 187134 as the means to apply punitive actions against Plaintiffs refusing administration of a countermeasure under the PREP Act was *ultra vires* and, therefore, lacked the force of law.

102.   Moreover, Defendants' use of Ordinance No. 187134 to penalize Plaintiffs for refusing the administration of a PREP Act countermeasure deprived Plaintiffs of their Constitutional and statutory rights.

## E.   FOURTEENTH AMENDMENT EQUAL PROTECTION OF LAWS

103.   The Fourteenth Amendment to the U.S. Constitution guarantees equal protection of the laws.

104.   It is a well-established U.S. Supreme Court precedent that a federal statute conferring a right onto an individual in unambiguous language is enforceable under 42 U.S.C. § 1983.[41]

---

[41] *Maine v. Thiboutot*, 448 U.S. 1 (1980), the court held that "Even were the language ambiguous, however, any doubt as to its meaning has been resolved by our several cases suggesting, explicitly or implicitly, that the §1983 remedy broadly encompasses violations of federal statutory as well as constitutional law." See also, *Health and Hospital Corporation of Marion Cty. V. Talevski,* 599 U.S. ____ (2023).

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

105.    21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) contains a required condition of the Secretary "to ensure that individuals to whom the product is administered are informed — 'of the option to accept or refuse administration of the product.'"

106.    Therefore, the statute conferred a legal right onto Plaintiffs to accept or refuse any product authorized under 21 U.S.C. §360bbb-3. The "option" is a federally secured right established by a valid act of Congress.

107.    Defendants owed a Constitutional duty to treat Plaintiffs equally before the law, irrespective of their chosen statutory option. That Constitutional duty required Defendants to ensure Plaintiffs were free from outside pressures when considering either option and, once the option was chosen, to treat Plaintiffs equally, irrespective of the option chosen.

108.    As a matter of law, Defendants are not allowed to treat persons choosing the option to accept differently than persons choosing the option to refuse under 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III).

109.    The statute does not afford Defendants the legal authority to establish positive or negative benefits based on an individual's 21 U.S.C. §360bbb-3 chosen option.  Such conditions violate the Equal Protection doctrine guaranteed to Plaintiffs under the Fourteenth Amendment.

110.    However, Defendants' Ordinance prospectively applied punitive actions only to persons (Plaintiffs) exercising the federally secured option to refuse

under 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) and the PREP Act in violation of

Plaintiffs' Fourteenth Amendment rights.

111.    Section 4.701(c)(4)[42] violates the equal protection doctrine by

penalizing persons choosing the option to refuse.

112.    Section 4.703(b)[43] violates the equal protection doctrine by requiring

only those employees who chose the option to refuse to wear a covered

countermeasure (mask).

113.    Section 4.703(c)[44] violates the equal protection doctrine by requiring

only those employees who chose the option to refuse the product to participate in a

vaccination training course.

/

---

[42] Effective October 20, 2021, any new contract executed by the City shall include a clause requiring employees of the contractor and/or persons working on their behalf who interact with City employees, are assigned to work on City property for the provision of services, and/or come into contact with the public during the course of work on behalf of the City to be fully vaccinated.
[43] Employees who are unvaccinated, partially vaccinated, or have an unreported status for any reason shall, in compliance with City standards and notwithstanding public policy guidelines, continue to wear masks and adhere to physical distancing protocols while present at any City worksite or facility or interacting with members of the public, except where it would be physically hazardous to do so due to the type of work performed.
[44] Beginning October 5, 2021, any Employee (as defined herein) who is not fully vaccinated shall be required to complete an online vaccination training course administered by the Personnel Department. The City will continuously assess the need for such training.

114.   Section 4.704(a)[45] violates the equal protection doctrine by denying Plaintiffs who chose the option to refuse the right to "promote," "transfer," or participate in an "appointment" while not denying the same for employees who chose to accept the product.  This section of the law was meant to unlawfully coerce participation in an unlicensed medical product, having severe legal consequences for the end user of the product.

115.   Defendants' Ordinance No. 187134 and actions taken under its authority were *ultra vires* because it required the City of Los Angeles to treat Plaintiffs differently solely on their 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) option and PREP Act choice of participation, in violation of the Fourteenth Amendment's equal protection guarantees.

## F.   FOURTEENTH AMENDMENT DUE PROCESS

116.   The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution guarantees the right to due process of law before infringing a citizen's interest in life, liberty, or property.

---

[45] All candidates and applicants seeking initial City employment, promotions, or transfers, including regular appointments, emergency appointments, temporary appointments, intermittent appointments, limited appointments, exempt full-time and half-time and hiring hall employment, must meet the minimum qualification of being fully vaccinated or receive an exemption and report their vaccination status prior to the appointment, promotion, or transfer.

117.   21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) contains a required condition of the Secretary "to ensure that individuals to whom the product is administered are informed — 'of the option to accept or refuse administration of the product.'"

118.   The option applies to any product authorized under the statute, which includes COVID-19 testing articles, masks, and other drugs, biologics, and devices.

119.   The PREP Act requires only voluntary participation.

120.   Defendants Ordinance No. 187134 stripped Plaintiffs of their legal right to choose the 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) option to refuse without consequence and subjected them to involuntary participation in a PREP Act countermeasure without a hearing.

121.   If there is a consequence to a person exercising a specific right conferred upon them by a valid act of Congress, then the "right" is not a right.

122.   Defendants violated the substantive due process rights of Plaintiffs when enacting Ordinance No. 187134 because that Ordinance prospectively stripped defendants of their federally secured legal right to refuse without a hearing.

123.   The PREP Act strips an individual of their due process rights to seek judicial relief should injury occur from the use of a product under the statute's

authority, but only after the person legally and effectively consents[46] to the use of the product (i.e., free from outside pressures). This reason is why the "program" is under "voluntary conditions."

124.    Defendants cannot compel Plaintiffs, under threat of penalty, to surrender their due process rights.

125.    Such a requirement is a hostile attack on the fundamental principles upon which the federal Constitution is founded.

126.    At all times pertinent, Defendants refused to acknowledge Plaintiffs' statutory authority to refuse the MCMs and PREP Act countermeasures without consequence.

127.    Therefore, irrespective of any procedure to allow Plaintiffs a date, time, and place to air their complaint, their rights were never adjudicated impartially.[47]

//

_____

[46] Investigational uses of products funded or under federal authority must comply with 45 CFR § 46.116, 122 and the Belmont Report which defines "legally effective informed consent." Defendants are not authorized to obtain Plaintiffs' consent and such fact demonstrates its mandate is *ultra vires*. **[NOTE: hospitals have dual roles; (1) employer and (2) medical practitioner. The employer is not authorized to obtain consent and it is the employer issuing the mandate.]**
[47] Plaintiffs have the Constitutional right "to present [their] case and have its merits fairly judged." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)

128.   Defendants violated the procedural due process rights of Plaintiffs by refusing to acknowledge their statutory authority to refuse the MCMs without incurring a penalty or losing a benefit to which they were otherwise entitled.

129.   Defendants' enactment of Ordinance No. 187134 and actions taken under its authority were *ultra vires* because it automatically stripped Plaintiffs of their 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) legal authority without a hearing in violation of Plaintiffs' Fourteenth Amendment substantive due process rights.

130.   Moreover, Defendants did not provide Plaintiffs with an opportunity to have their complaint heard before an impartial committee that would adjudicate through the understanding of Plaintiffs' right to refuse compliance with Ordinance No. 187134 as applied, which is a violation of Plaintiffs' Fourteenth Amendment procedural due process rights.

131.   Worse yet is the shocking and outrageous behavior of Defendants using Ordinance No. 187134 to prospectively strip Plaintiffs due process rights should they incur an injury from the use of PREP Act countermeasure.

132.   Persons who surrendered their Constitutional protections due to Defendants' coercive Ordinance and injected one of the investigational drugs into their bodies and also incurred injury from the countermeasure's use are prohibited by the PREP Act from seeking judicial relief for all practical purposes.

133.   Defendants' enactment of Ordinance No. 187134, as applied, was

*ultra vires* because it stripped Plaintiffs of legal rights outside of their Fourteenth

Amendment due process rights.

## G.   UNCONSTITUTIONAL CONDITIONS DOCTRINE

134.   Governments are preempted from requiring persons to participate in

an EUA, EUI, or PREP Act countermeasure as the basis to enjoy a privilege of the

government (e.g., education, use of facilities, unemployment benefits, public

employment, etc.) to which they are otherwise entitled.

135.   The Supreme Court has held that a person "may not barter away his

life or his freedom, or his substantial rights" (*Home Ins. Co. of New York v. Morse*,

87 U.S. 455, 451 (1874)).

136.   The City of Los Angeles holds authority over public employment and

establishes the conditions by which persons can enjoy that public benefit.

137.   The US Supreme Court held:

> "It would be a palpable incongruity to strike down an act of state
> legislation which, by words of express divestment, seeks to strip
> the citizen of rights guaranteed by the federal Constitution, but
> to uphold an act by which the same result is accomplished under
> the guise of a surrender of a right in exchange for a valuable
> privilege which the state threatens otherwise to withhold. It is not
> necessary to challenge the proposition that, as a general rule, the
> state, having power to deny a privilege altogether, may grant it
> upon such conditions as it sees fit to impose. But the power of
> the state in that respect is not unlimited; and **one of the
> limitations is that it may not impose conditions which require
> the relinquishment of constitutional rights.** If the state may

compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. **It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence** (emphasis added)."[48]

138. Ordinance No. 187134 established a condition that Plaintiffs must inject or otherwise use an EUA, EUI, or PREP Act product as a condition to enjoy the government privilege of continuing or starting public employment. The U.S. Supreme Court held:

> Broadly stated, the rule is that the right to continue the exercise of a privilege granted by the state cannot be made to depend upon the grantee's submission to a condition prescribed by the state which is hostile to the provisions of the federal Constitution.[49]

139. Ordinance No. 187134 was "hostile" to the federal Constitution because it enabled Defendants to "impose conditions which require[d] the relinquishment of constitutional rights" "as a condition" of Plaintiffs to enjoy a "privilege" of the government, thus manipulating the Constitution "out of existence."

140. Defendants' enactment of Ordinance No. 187134 was *ultra vires* because it established an unconstitutional condition upon Plaintiffs to enjoy a privilege of the government to which they were otherwise entitled.

---

[48] *Frost Trucking Co. v. R.R. Com*, 271 U.S. 583, 593-94 (1926)

[49] *Western Union Tel. Co. v. Kansas*, 216 U.S. 1, 47, 48 S., 30 S. Ct. 190; *Western Union Tel. Co. v. Foster*, 247 U.S. 105, 114, 38 S. Ct. 438, 1 A. L. R. 1278. (*U.S. v. Chicago, M., St. P. &P. Railway Co.*, 282 U.S. 311, 328-329 (1931)).

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

## H. WILLFUL AND WANTON DISREGARD FOR RIGHTS

141. At all times pertinent, Defendants concealed Plaintiffs' rights to refuse administration of an EUA, EUI, or PREP Act product, which are under laws having significant legal consequences to Plaintiffs' legal rights.

142. Individuals who consent to receive one of the MCMs must agree to the following terms and conditions, including but not limited to:

    A.    forfeiture of civil litigation rights resulting from injuries;[50]

    B.    allowing their private identifiable information to be collected and used for a variety of purposes by unknown persons;[51]

    C.    allow their involvement with the EUA product to be cataloged by various persons for unknown purposes,

    D.    allow the data collected about their adverse events to be utilized by researchers for unknown purposes and for eternity,[52]

    E.    assume greater risks to their safety, health, and legal rights.[53]

---

[50] PREP Act forfeits all civil actions for damages in most situations.

[51] Each EUA and/or the CDC COVID-19 Vaccination Program Provider Program requires manufacturers and/or emergency stakeholders to obtain private identifiable information.

[52] Each EUA and/or the CDC COVID-19 Vaccination Program Provider Program requires manufacturers and/or emergency stakeholders to monitor, report and study a variety of adverse reactions to EUA products.

[53] 21 U.S.C. §360bbb-3 requires potential recipients to be made aware of the risks, alternatives, and the fact that the product is only authorized by the Secretary under emergency conditions. These elements provide potential recipients with the required information to make a quality and legally effective decision to consent. Therefore,

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

143.    Defendants enacted a "vaccination" program but exclusively relied on non-vaccines for compliance.

144.    Defendants did not inform Plaintiffs that EUA drugs were not licensed by the FDA nor classified as a "vaccine."

145.    Section 4.702[54] required Plaintiffs to seek a religious or medical exemption to have the right to opt out of having an investigational new drug injected into their bodies as a condition to continue employment.  The requirement violated federal law because Plaintiffs' authority to reject the administration of an EUA, EUI, or PREP Act product is absolute.  Defendants had no authority to establish an exemption policy nor act upon that policy when Plaintiffs refused to seek such unlawful exemption.

146.    Section 4.701(d)(1) states, "The City shall continue to collect and regularly report employees' vaccination status as long as such data is deemed necessary and useful. The City will collect data in accordance with the City's Workplace Safety Standards." This section of the law is a license by Defendants

---

consent means the individual agrees to assume more than minimal risk as defined in 21 CFR 50.3(k).

[54] All current and future City employees shall have the right to petition for a medical or religious exemption to be evaluated on a case-by-case basis, consistent with City procedures for reasonable accommodation requests.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

for the City of Los Angeles to harass Plaintiffs by requiring them to divulge private health information.

147.   Plaintiffs alone have the right to determine EUA, EUI, and PREP Act participation, and their choice to inject or not inject, or otherwise use, a countermeasure is a private affair, and Defendants do not have lawful authority to demand that Plaintiffs use those products under threat of penalty nor disclose their use of them.

148.   Section 4.701(d)(1)[55] is a form of coercion because it allows city employees to unlawfully insert themselves into the private affairs of Plaintiffs until they decide to use a covered countermeasure.

149.   Defendants enacted an Ordinance outside of their scope of authority and in defiance of the United States Congress and the federal Constitution.

150.   Defendants used the Ordinance as the means to apply coercive and punitive punishment to Plaintiffs for the sole reason of them exercising a legal right of which Defendants were restricted from interfering.

---

[55] The City shall continue to collect and regularly report employees' vaccination status as long as such data is deemed necessary and useful. The City will collect data in accordance with the City's Workplace Safety Standards.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

151. Defendants used the Ordinance to terminate the employment of Plaintiffs or otherwise withheld a benefit to which Plaintiffs were otherwise entitled in violation of Plaintiffs' Fourteenth Amendment and statutory rights.

152. Defendants destroyed the emotional well-being of Plaintiffs, and their dreams, goals, housing, retirement accounts, healthcare, and the lives of the loved ones relying upon Plaintiffs having access to living wages, solely because Plaintiffs chose a federally secured right Defendants disagreed with, and it infuriated them.

153. Therefore, Defendants enacted an Ordinance providing them legal cover to accomplish that which the Constitution and the U.S. Congress prohibited.

154. Defendants engaged in lawless activity that shocked the conscience as outrageous, intolerable, and extreme, and placed Plaintiffs in severe emotional distress, fearing for their lives[56] and livelihoods. Such debased leadership is unheard of in modern societies and exceeds the bounds of decency.

## VI. LEGAL CLAIMS

155. The facts described above constitute a deprivation of several rights guaranteed to Plaintiffs by the United States Constitution, federal statutes, and treaties.

---

[56] VAERS reported 1,562,008 entries from December 2020 through May 26, 2023, including 35,272 deaths (1.6 per hour) and 263,462 (12.11 per hour) serious injuries for the new and unvetted mRNA drugs. These numbers demonstrate historical entries for any drug reported to VAERS since it was first established.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

156.   These deprivations are actionable under 42 U.S.C. § 1983 because the Defendants acted under color of state law when enacting and acting upon Ordinance No. 187134 involving drugs, biologics, and devices under federal authority and or its funding.

157.   Court precedent demonstrates that federal statutes and regulations with rights conferring language are enforceable under 42 U.S.C. §1983.[57]

158.   Defendants were, and are, restricted from attempting to use their authority to amend the above-referenced statutes, regulations, treaties, agreements, and contracts due to the Supremacy Clause Doctrine and express language under the PREP Act.

159.   The Supremacy Clause Doctrine, and the express preemption language in the PREP Act and 21 U.S.C. §360bbb-3 (the EUA statute), restrict public and private employers from using laws, Ordinances, or regulations to require individuals to participate in any EUA or PREP Act activity or use any EUA or PREP Act product.

//

---

[57] *Maine v. Thiboutot*, 448 U.S. 1 (1980), the court held that "Even were the language ambiguous, however, any doubt as to its meaning has been resolved by our several cases suggesting, explicitly or implicitly, that the §1983 remedy broadly encompasses violations of federal statutory as well as constitutional law." See also, *Health and Hospital Corporation of Marion Cty. V. Talevski.*

160.   This extends to any at-will employment law, doctrine, or custom an employer would otherwise claim as the right to interfere with 21 U.S.C. §360bbb-3, or PREP Act protocols and to amend conditions established by Congress for Plaintiffs' benefit.

## FIRST CAUSE OF ACTION

## 42 U.S.C. § 1983 – Subjected to Investigational Drug Use

161.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 160, as if fully set forth herein.

162.   21 U.S.C. §360bbb-3, Article VII of the ICCPR Treaty, Federal Wide Assurance, 10 U.S.C. § 980, EUA Scope of Authorization letters, the CDC COVID-19 Vaccination Program Provider Agreement, 45 CFR Part 46, the Belmont Report, and the Fourteenth Amendment clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

163.   21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) (the EUA statute) contains a required condition of the Secretary "to ensure that individuals to whom the product is administered are informed — 'of the option to accept or refuse administration of the product.'"

164.   21 U.S.C. §360bbb-3, the CDC COVID-19 Vaccination Program Provider Agreement, and each EUA's Scope of Authorization contains research

conditions for COVID-19 medical products meeting 45 CFR 46.102(l)'s definition

of research requiring adherence to 45 CFR § 46.101[58] *et seq.*

165.   "Before involving a human subject in research covered by this policy,

an investigator shall obtain the legally effective informed consent of the subject or

the subject's legally authorized representative."[59] 45 CFR 46.116(a)(1)

166.   45 CFR § 46.116 and the Belmont Report contain the only known

definition of legally effective informed consent.

167.   45 CFR 46.116(b)(8) states: "A statement that participation is

voluntary, refusal to participate will involve no penalty or loss of benefits to which

the subject is otherwise entitled, and the subject may discontinue participation at

any time without penalty or loss of benefits to which the subject is otherwise

entitled."

168.   The Belmont Report, having the force of law,[60] declares, "An

agreement to participate in research constitutes a valid consent only if voluntarily

---

[58] "This policy applies to all research involving human subjects conducted, supported, or otherwise subject to regulation by any Federal department or agency" 45 CFR 46.101(a).

[59] The CDC COVID-19 Vaccination Program was not a clinical trial but it was administered under required research parameters requiring adherence to 45 CFR Part 46, the Belmont Report, Article VII of the ICCPR Treaty, 10 U.S.C. § 980, among other treaties, federal executive agreements, federal contracts, and state laws.

[60] 45 CFR § 46.101(c), 45 CFR 46.101(i), 45 CFR § 46.122

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

given. This element of informed consent requires conditions free of coercion and undue influence" and "Respect for persons requires that subjects, to the degree that they are capable, be given the opportunity to choose what shall or shall not happen to them. This opportunity is provided when adequate standards for informed consent are satisfied."

169.   Defendants breached their duties to establish "adequate standards" of informed consent when applying "sanctions," "coercion," "undue influence," and "unjustifiable pressures" on Plaintiffs to participate in COVID-19 investigational new drugs and devices (e.g., masks, testing articles). At all times pertinent, Defendants did not obtain Plaintiffs' legally effective informed consent.

170.   Article VII of the ratified International Covenant on Civil and Political Rights (ICCPR) Treaty affirms that "…no one shall be subjected without his free consent to medical or scientific experimentation."

171.   The Defendants' actions described above, individually and/or collectively, acting under color of law, and in deprivation of the Constitutional rights and rights secured by the above federal statutes, regulations, and treaty, unlawfully subjected Plaintiffs to the use of investigational medical products under threat of penalty outside of their legally effective informed consent as described in the above facts, thereby causing them damages described in Paragraphs 215 through 221, *infra*.

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 – Deprivation of Equal Protection Rights

172.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 160, as if fully set forth herein.

173.   The CDC COVID-19 Vaccination Program Provider Agreement, and the implementing statutes and regulations found at 45 CFR Part 46, the Belmont Report, 21 U.S.C. §360bbb-3, Article VII of the ICCPR Treaty, Federal Wide Assurance, the EUA Scope of Authorization letter, and the Fourteenth Amendment clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

174.   The Fourteenth Amendment to the U.S. Constitution guarantees equal protection of the laws.

175.   At all times pertinent, Defendants intentionally penalized only Plaintiffs who exercised their federal statutory right to refuse administration of a product under the PREP Act or an EUA drug (e.g., Pfizer-BioNTech COVID-19 Vaccine), biologic, or device (e.g., masks, COVID-19 testing articles), thereby applying the laws unequally to Plaintiffs and depriving them of their Constitutional Equal Protection Rights.

176.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, have deprived the Plaintiffs of their equal protection rights

as described in the above facts, thereby causing them damages described in Paragraphs 215 through 221, *infra*.

### THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 – Deprivation of Constitutional Due Process Rights

177.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 160, as if fully set forth herein.

178.   The CDC COVID-19 Vaccination Program Provider Agreement, and the implementing statutes and regulations found at 45 CFR 46, the Belmont Report, 21 U.S.C. §360bbb-3, Article VII of the ICCPR Treaty, Federal Wide Assurance, the EUA Scope of Authorization letter, and the Fourteenth Amendment clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

179.   The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution guarantees the right to due process of law before infringing a citizen's interest in life, liberty, or property.

180.   Plaintiffs have the Constitutional right "to present [their] case and have its merits fairly judged." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). At all times pertinent, Defendants refused to acknowledge Plaintiffs' Constitutional and Statutory rights, thereby nullifying impartiality.

181.   Defendants' enactment and acting upon Ordinance No. 187134 stripped Plaintiffs of their statutory authority to refuse participation in an activity

or countermeasure under 21 U.S.C. §360bbb-3 or the PREP Act without consequence without a hearing, violating Plaintiffs' substantive due process rights.

182.   Defendants did not allow Plaintiffs "to present [their] case and have its merits fairly judged." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). At all times pertinent, Defendants refused to acknowledge Plaintiffs' Constitutional and Statutory rights, thereby nullifying impartiality and violating Plaintiffs' procedural due process rights.

183.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, have deprived the Plaintiffs of their substantive and procedural due process rights as described in the above facts, thereby causing them damages described in Paragraphs 215 through 221, *infra*.

## **FOURTH CAUSE OF ACTION**

## **Unconstitutional Conditions Doctrine - 42 U.S.C. § 1983**

184.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 160, as if fully set forth herein.

185.   The CDC COVID-19 Vaccination Program Provider Agreement, and the implementing statutes and regulations found at 45 CFR §46, the Belmont Report, 21 U.S.C. §360bbb-3, Article VII of the ICCPR Treaty, Federal Wide

Assurance, the EUA Scope of Authorization letter, and the Fourteenth Amendment clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

186. "…[T]the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited; and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence (emphasis added)." *Frost Trucking Co. v. R.R. Com*, 271 U.S. 583, 593-94 (1926)

187. Defendants established conditions requiring Plaintiffs to surrender their Constitutional rights under the Fourteenth Amendment to enjoy privileges they were otherwise entitled, such as public employment.

188. The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, manipulated the Constitutional rights of Plaintiffs out of existence as described in the above facts, thereby causing them damages described in Paragraphs 215 through 221, *infra*.

# FIFTH CAUSE OF ACTION

## PREP Act - 42 U.S.C. § 1983

189.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 160, as if fully set forth herein.

190.   The PREP Act, the CDC COVID-19 Vaccination Program Provider Agreement, and the implementing statutes and regulations found at 45 CFR Part 46, the Belmont Report, 21 U.S.C. §360bbb-3, Article VII of the ICCPR Treaty, Federal Wide Assurance, the EUA Scope of Authorization letter, and the Fourteenth Amendment clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

191.   The PREP Act provides certain immunities to "covered countermeasures" when the HHS Secretary determines there is a public health emergency and makes a declaration of that emergency through the publication in the Federal Register specifying the conditions by which the covered countermeasure and covered persons can participate and the use of such covered countermeasure.[61]

192.   Congress preempted Defendants from establishing laws and continuing in effect with existing ones (i.e., at-will employment doctrine) that

---

[61] 42 USC 247d-6d(b)(1)

would otherwise interfere with Plaintiffs' authority with respect to "conduct undertaken" concerning "any matter included in a requirement applicable" to a "covered countermeasure" under the PREP Act or 21 U.S.C. §360bbb-3 including the required condition that ***Plaintiffs be informed of their legal right to either accept or refuse said countermeasure***.[62],[63](Emphasis added.)

193.    Congress was explicit that the HHS Secretary must establish conditions ensuring that "potential participants are educated with respect to…the voluntary nature of the program…"[64]

194.    The "program" consists of those agreeing to manufacture, distribute, administer ("covered person"), and receive[65] ("covered individual") the product.

195.    Congress expressly restricted the HHS Secretary from having any authority to require any person to participate in any activity involving a "drug," "biologic," or "device" under 21 U.S.C. §360bbb-3[66] or any "covered countermeasure" under the PREP Act.

---

[62] 21 U.S.C. 301 is the Federal Food, Drug and Cosmetic Act, which ranges from §301 to §399, and thus includes 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III).
[63] 42 USC 247d-6d(b)(8)
[64] 42 USC 247d-6e(c)
[65] 42 U.S.C. §247d-6e(e)(2)
[66] 21 U.S.C. §360bbb-3(l): "Nothing in this section provides the Secretary any authority to require any person to carry out any activity that becomes lawful pursuant to an authorization under this section…"

196.   By extension, any person authorized to participate in the program is also restricted from mandating participation.

197.   Defendants established laws and policies that conflicted with the PREP Act and 21 U.S.C. §360bbb-3 when they required Plaintiffs to participate in the use of a covered countermeasure under threat of penalty.

198.   Moreover, Defendants engaged in policy-making and conduct that conflicted with the PREP Act and the Fifth and Fourteenth Amendments of the United States Constitution.

199.   Mandatory participation in PREP Act covered countermeasures is a severe violation of the Constitution's Due Process guarantees.

200.   No person can be required to enter into a legally binding agreement requiring the forfeiture of legal rights under threat of penalty.

201.   The terms and conditions associated with the PREP Act and 21 U.S.C. §360bbb-3 represent a legally binding agreement as established by the U.S. Congress.

202.   Those terms require Plaintiffs to forfeit their right to seek judicial relief from injuries sustained from the use of the countermeasure and injuries sustained from the countermeasure's administration.

//

203. The agreement also requires Plaintiffs to divulge their private health information and private identity and assume greater risks to their health, safety, and legal rights.

204. Defendants' pronouncement that Plaintiffs must participate in covered countermeasures prospectively denies Plaintiffs their due process rights should they incur injury because the PREP Act denies them access to judicial relief for those injuries.

205. Defendants utilized their position of authority to place Plaintiffs under threat of penalty if they chose not to participate in a PREP Act countermeasure, despite Defendants' positions having no such authority.

206. Defendants changing the voluntary nature of the program into an involuntary program endangers the immunities of existing covered countermeasures established by the HHS Secretary.

207. Defendants' interference is a direct assault on the Constitutional rights of Plaintiffs, which opens the doors to legal remedies not envisioned by Congress but required of the Constitution for resulting injuries sustained by individuals when under threat of penalty to participate.

208. The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, deprived the Constitutional and federal legal rights of

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

Plaintiffs to only volunteer in PREP Act products as described in the above facts, thereby causing them damages described in Paragraphs 215 through 221, *infra*.x

## SIXTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

209.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 160, as if fully set forth herein.

210.   When the United States Congress refused to allow Defendants to apply consequences to Plaintiffs refusing to participate in the use of COVID-19 investigational drugs, Defendants engaged in a scorched-earth policy and inflicted, with malicious intent, severe emotional distress to the fullest extent that one in their positions of authority and power could inflict, all to the detriment of Plaintiffs' emotional well-being.

211.   The Defendants' conduct, committed with gross negligence, recklessness, or intent, as described above, gives rise to a claim of outrageous conduct and intentional infliction of emotional distress under the common law of the State of California against the Defendants for the damages described in Paragraphs 215 through 221, *infra*.

## SEVENTH CAUSE OF ACTION

### Implied Private Right of Action 21 U.S.C. §360bbb-3

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

212. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 160, as if fully set forth herein.

213. Should the court not agree that §1983 provides Plaintiffs with the procedural vehicle to sue for the deprivation of rights under the EUA statute, Plaintiffs claim that 21 U.S.C. §360bbb-3 contains an implied private right of action pursuant to *Cannon v. University of Chicago*, 441 U.S. 677 (1979), *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990), and *Cort v. Ash*, 422 U.S. 66 (1975).

214. The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty have deprived the Plaintiffs of their explicit right to refuse the administration of an emergency use authorized drug and/or medical product without penalty as described in the above facts, thereby causing them damages described in Paragraphs 215 through 221, *infra*.

## VII. DAMAGES RECOVERABLE AND DEMANDED

215. The following paragraphs are hereby incorporated by reference into Counts One through Ten, as if set forth here *in extenso*.

216. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs have suffered past damages and will suffer future damages, both compensatory and general, including, but not limited to, front and back pay; loss of benefits; loss of accumulated sick pay; loss of retirement

accounts; lost earnings on retirement funds; vacation time, compensatory time, and paid time off; negative tax consequences (in the event of a lump sum award), including related accountant fees; attorney's fees; emotional distress; mental, psychological and physical harm; loss of income; loss of enjoyment of life; for which defendants are liable in compensatory, punitive, exemplary, legal, equitable, and all other damages that this Court deems necessary and proper.

217.    When the Defendants' behavior reaches a sufficient threshold, punitive damages are recoverable in § 1983 cases. *Smith v. Wade*, 461 U.S. 30 (1983).  Because Defendants' actions were intentional and willful, Plaintiffs are entitled to, and hereby demand, an award of punitive damages against each and every Defendant in an amount sufficient to deter them, individually and collectively, from repeating their unconstitutional actions.  *Smith v. Wade*, 461 U.S. 30 (1983)

218.    Because Defendants' actions involved reckless or callous indifference to the Plaintiffs' federally protected rights, Plaintiffs are entitled to, and hereby demand, an award of punitive damages against each and every Defendant in an amount sufficient to deter them, individually and collectively, from repeating their unconstitutional actions.  *Smith v. Wade*, 461 U.S. 30 (1983)

219.    Because Defendants' actions were motivated by evil motive or intent, Plaintiffs are entitled to, and hereby demand, an award of punitive damages against

each and every Defendant in an amount sufficient to deter them, individually and collectively, from repeating their unconstitutional actions. *Smith v. Wade*, 461 U.S. 30 (1983)

220.   Plaintiffs seek recovery of attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976 and 42 U.S.C. § 1988, and under any other provision of law or basis.

221.   Plaintiffs seek recovery of all court costs and out-of-pocket litigation expenses, including but not limited to expert fees, as well as legal interest on any amount of damages awarded.

## VIII.  JURY TRIAL DEMANDED

222.   Plaintiffs are entitled to, and hereby demand, a trial by jury on all issues of fact.

## IX.  PRAYER

Wherefore, Plaintiffs pray for judgment in their favor and against Defendants as follows:

## ON THE FIRST CAUSE OF ACTION

1.   For damages described above for violating Plaintiffs' right to refuse EUA/EUI products.

2.   For reasonable attorneys' fees.

//

## ON THE SECOND CAUSE OF ACTION

1.      For damages described above for the deprivation of Plaintiff's equal protection rights under the Constitution.

2.      For reasonable attorneys' fees.

## ON THE THIRD CAUSE OF ACTION

1.      For damages described above for the deprivation of Plaintiff's due process rights under the Constitution.

2.      For reasonable attorneys' fees.

## ON THE FOURTH CAUSE OF ACTION

1.      For damages described above for violation of the Unconstitutional Conditions Doctrine.

2.      For reasonable attorneys' fees.

## ON THE FIFTH CAUSE OF ACTION

1.      For damages described above for the deprivation of Plaintiff's rights under the PREP Act.

2.      For reasonable attorneys' fees.

## ON THE SIXTH CAUSE OF ACTION

1.      For damages describe above due to intentional infliction of emotional distress.

2.      For reasonable attorneys' fees.

## ON THE SEVENTH CAUSE OF ACTION

1.      To allow the Plaintiffs a private right of action under the EUA statute in the event the court does not find that §1983 provides Plaintiffs the procedural vehicle to sue for deprivation of the rights identified above.

2.      For reasonable attorneys' fees.

## ON ALL CAUSES OF ACTION

1.      For judgment in favor of Plaintiffs;

2.      For costs of suit herein; and

3.      For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**SCHEXNAYDRE LAW FIRM**
BY:    /s/ *David J. Schexnaydre*
DAVID J. SCHEXNAYDRE, T.A.
Louisiana Bar Roll #: 21073
2895 Highway 190 • Suite 212
Mandeville, Louisiana 70471
Telephone: (985) 292-2020
Fax: (985) 235-1089
Email: david@schexnaydre.com
Lead Counsel for Plaintiffs-*Pro Hac Vice*

AND

JENNIFER W. KENNEDY
ATTORNEY AT LAW
BY:   /s/ *Jennifer W. Kennedy*
JENNIFER W. KENNEDY, ESQ.
CA Bar No.: 185406
61 S. Baldwin Ave #1626
Sierra Madre, CA 91025-7076
Telephone: 626-888-2263
Email:    jenniferkennedyesq@gmail.com
Local Counsel for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs demand a right to a jury trial for all matters so triable.

**SCHEXNAYDRE LAW FIRM**

Dated: November 17, 2023          /s/ David Schexnaydre, Esq.

**Jennifer W. Kennedy, Attorney at Law**

Dated: November 17, 2023          /s/ Jennifer W. Kennedy, Esq.